UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DERRICK L. BRADDOCK, #216630,

        Petitioner,

                             CASE NO. 07-CV-11663
v.                             HONORABLE LAWRENCE P. ZATKOFF

JAN E. TROMBLEY,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR A WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY AND LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Michigan prisoner Derrick Braddock ("Petitioner") has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his convictions for first-degree home invasion, Mich. Comp. Laws § 750.11a(2), assault with intent to commit murder, Mich. Comp. Laws § 750.83, and two counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b, which were imposed following a jury trial in the Saginaw County Circuit Court. In 2004, Petitioner was sentenced as a fourth habitual offender to 12 to 20 years imprisonment on the home invasion conviction, a concurrent term of life imprisonment on the assault conviction, and concurrent terms of two years imprisonment on each of the felony firearm convictions, to be served consecutively to the other sentences.

In his pleadings, Petitioner raises claims concerning his right to confront witnesses, jury bias, prosecutorial misconduct (and cumulative effect), the jury instructions, insufficient evidence, the validity of his sentence, and ineffective assistance of defense counsel. Respondent has filed an

answer to the petition contending that it should be denied. For the reasons stated, the Court denies the petition. The Court also denies a certificate of appealability and denies leave to proceed *in forma pauperis* on appeal.

## I. Facts and Procedural History

Petitioner's convictions arise from a home invasion and shooting which occurred at a residence in Saginaw, Michigan on January 30, 2003. At the time of the incident, Petitioner was on probation for two felonious assault convictions and one resisting arrest conviction that were imposed following a jury trial in the Saginaw County Circuit Court in 2001 and for which he was sentenced to concurrent terms of nine months county jail time and four years probation. Petitioner was discharged from those sentences in 2004.

At trial, Tatasha Willis ("Willis") testified that she and her boyfriend, Quincy Thomas ("Thomas"), were at home in bed that evening when they heard a knock at the door. Willis went to the door and saw a man later identified as Marcus Williams ("Williams") outside. As Thomas got up, the side door near the garage was kicked open, the kitchen door was forced open, and three men entered the house, one of whom was Petitioner. Willis ran into her bedroom and retrieved her own gun, a registered .38 pistol. The men indicated that they were looking for Thomas, but he had hidden in a closet. The men began shooting and Willis returned fire. Willis was hit twice – once in the back and once in the thigh of her leg. Petitioner was shot in the chest and upper forearm. The chest shot exited his back and caused paralysis. His companions dragged him out of the house, but then abandoned him and fled the scene. Willis and a neighbor called the police.

Thomas testified that he ran into a closet by the front door when the men came into the house. He remained there until police arrived at the scene. Thomas knew Williams, but did not know Petitioner or Fred Bouthel. Thomas could not identify anyone as the shooters.

When the police arrived, Petitioner was lying outside in the backyard near drag marks in the snow. A black ski mask, hood sweatshirt, and black ski jacket were also lying in the snow. Petitioner told the police that Willis shot him and that she was in the house. Willis and Thomas were naked and upset in the house. An officer observed a large amount of marijuana in one of the bedrooms as the victims got dressed. The investigating officers recovered numerous items from the scene, including the clothing, marijuana, and bullet and shell casings. Testing showed that multiple guns were fired during the incident, likely a .38, a .357, and a nine-millimeter. The police also found a vehicle parked around the corner from the house which belonged to Petitioner's girlfriend and contained Fred Bouthel's wallet and identification.

Petitioner testified on his own behalf at trial. He claimed that he only went to the residence with Williams and Fred Bouthel to purchase marijuana. He had won some money in the lottery and was going to use that money for the purchase. He testified that they knocked on the door and Thomas, who was fully clothed, opened the door in the garage area. Petitioner saw Willis who was wearing a robe and holding a gun at her side. Petitioner then heard a lot of shooting. He passed out and was later awakened by the police. Petitioner did not see who fired the shots. He acknowledged that the ski mask, sweatshirt, and gloves found at the scene were his, but said that the jacket belonged to Bouthel. Petitioner claimed that Williams and Thomas set him up to rob him.

At the close of trial, the jury found Petitioner guilty of the charged offenses. Following a hearing, the court sentenced him as a fourth habitual offender to 12 to 20 years imprisonment on the

home invasion conviction, a concurrent term of life imprisonment on the assault conviction, and concurrent terms of two years imprisonment on each of the felony firearm convictions, to be served consecutively to the other sentences.

Petitioner filed an appeal as of right with the Michigan Court of Appeals raising several claims of error, including those raised in the current petition. The Michigan Court of Appeals affirmed Petitioner's convictions and sentences. *People v. Braddock*, No. 256619, 2006 WL 335678 (Mich. Ct. App. Feb. 14, 2006) (unpublished). Petitioner also filed an application for leave to appeal with the Michigan Supreme Court, which was denied. *See People v. Braddock*, 477 Mich. 880, 721 N.W.2d 603 (2006).

Petitioner thereafter filed an initial habeas petition with this Court challenging his 2001 Saginaw County Circuit Court convictions (for two counts of felonious assault and one count of resisting arrest) contending that he was denied counsel of choice at trial and that appellate counsel was ineffective for failing to raise the issue on direct appeal. Petitioner claimed that the 2001 convictions were improperly used to enhance his sentences on the 2004 convictions. Respondent filed an answer to that initial petition contending that it should be denied for lack of merit. While the matter was pending, Petitioner moved to supplement/amend his petition and directly challenge his 2004 convictions. The Court granted his motion. In his amended petition, he raises the following claims:

     I.     He was denied his right to confrontation when the trial court precluded him from cross-examining an adverse witness about pending charges and a prior conviction.

     II.    He was denied a fair trial when the jury was exposed to extrinsic influence in the form that other evidence would not be heard.

     III.   The cumulative prosecutorial misconduct denied him a fair trial when the

prosecutor argued facts not in evidence, misstated the evidence, called him a liar, argued inconsistent theories, shifted the burden of proof, and commented on the defense failure to call a co-defendant as a witness.

IV.    He was denied the right to effective assistance of counsel when counsel failed to object to unreliable and prejudicial testimony.

V.     He was denied his right to due process when the trial court failed to instruct the jury on his theory of "mere presence" and trial counsel was ineffective for failing to object or request such instructions.

VI.    The prosecution presented insufficient evidence to support his convictions.

VII.   He was denied his Sixth Amendment right to have a jury find all facts determined for his sentence.

VIII.  He was denied the effective assistance of counsel when counsel failed to investigate his juvenile convictions.

Respondent filed an answer to the amended petition contending that it should be denied. Petitioner filed a reply to that answer. As part of that reply, he moved to dismiss his ineffective assistance of appellate counsel claim. The Court granted that motion. The matter is now ready for decision.

## II.  Standard of Review

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, govern this case because Petitioner filed his habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). The AEDPA provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d) (1996).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. However, "[i]n order for a federal court find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409.

Section 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Williams*, 529 U.S. at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). Section 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002); *see also Mitchell*, 540 U.S. at 16. While the requirements of "clearly

established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002).

Lastly, a federal habeas court must presume that state court factual determinations are correct. *See* 28 U.S.C. § 2254(e)(1). A habeas petitioner may rebut this presumption only with clear and convincing evidence. *See Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998).

### III. Analysis

#### A. Counsel of Choice/Sentencing Enhancement Claim

Petitioner first asserts that he is entitled to habeas relief because he was denied counsel of choice during his 2001 criminal proceedings and those convictions were improperly used to enhance his sentences on his 2004 convictions. Respondent contends that this claim lacks merit.

First, the use of the prior convictions to enhance Petitioner's current sentence is not a basis for habeas relief. As the Supreme Court has explained, "once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid. If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained." *Lackawanna Co. Dist. Attorney v. Coss*, 532 U.S. 394, 403-04 (2001). Thus, even if Petitioner's 2001 conviction were

unconstitutionally obtained, he cannot obtain habeas relief based on the trial court's use of that conviction to enhance his current sentence.[1]

The *Coss* Court did recognize an exception for challenges to an enhanced sentence "on the basis that the prior conviction used to enhance the sentence was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon v. Wainwright*," *Coss*, 532 U.S. at 404 (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)), based on the "special status of *Gideon* claims" and the "'unique constitutional defect'" that *Gideon* claims represent. *Coss*, 532 U.S. at 404 (quoting *Custis v. United States*, 511 U.S. 485, 496 (1994)). This exception, however, does not assist Petitioner. Although Petitioner asserts that he was denied his counsel of choice, he does not contend that he was denied counsel altogether, and the record indicates that he had the assistance of counsel. He thus did not suffer a violation of the Sixth Amendment under *Gideon*.

The other exception recognized by the Supreme Court in *Coss* is when the habeas action is the first and only forum available for review of the prior conviction, either because the state court refused to rule on a constitutional claim properly presented to it or because, after the time for direct or collateral review expired, a defendant obtained compelling evidence of actual innocence of the crime for which he was convicted. *Coss*, 532 U.S. at 404-06. This exception also does not help Petitioner. The record reveals that Petitioner had an opportunity to appeal and seek collateral review of his 2001 convictions (and took advantage of such opportunity), and he neither alleges nor

---

[1]Petitioner's 2001 convictions are not subject to independent habeas challenge because Petitioner was discharged from those sentences before he filed his petition. Thus, he is no longer "in custody" pursuant to those convictions as required by 28 U.S.C. § 2241. *See Coss*, 532 U.S. at 401.

offers compelling evidence of actual innocence. Petitioner has thus failed to demonstrate that he is entitled to habeas relief on this claim.

### B. Confrontation Claim

Petitioner next asserts that he is entitled to habeas relief because he was denied his confrontation rights when the trial court limited the cross-examination of prosecution witness Thomas. Specifically, Petitioner claims that he should have been allowed to impeach Thomas with evidence of a prior drug conviction and pending drug charges. Respondent contends that this claim lacks merit.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him. "The main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315 (1973). "Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested. Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness's story to test the witness's perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, *i.e.*, discredit the witness." *Id.* at 314.

The right of cross-examination, however, is not absolute. "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. VanArsdall*, 475 U.S. 673, 679 (1986); *see also Norris v. Schotten*, 146 F.3d 314, 329-30 (6th Cir. 1998).

Additionally, while the right of an accused to present a defense has long been recognized as "a fundamental element of due process[,]" *Washington v. State*, 388 U.S. 14, 19 (1967), "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." *United States v. Scheffer*, 523 U.S. 303, 308 (1998). A defendant "does not have an unfettered right to offer evidence that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence." *Montana v. Egelhoff,* 518 U.S. 37, 42 (1996) (quoting *Taylor v. Illinois*, 484 U.S. 400, 410 (1988)). State rules excluding evidence from criminal trials "do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'" *Scheffer,* 523 U.S. at 308 (internal citations omitted). "A defendant's interest in presenting...evidence may thus bow to accommodate other legitimate interests in the criminal trial process." *Id.* (internal quotations omitted). In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result. Rather, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

The Michigan Court of Appeals addressed this issue as a matter of state evidentiary law and concluded that the trial court's exclusion of the evidence was appropriate under the Michigan Rules of Evidence. The court explained in pertinent part:

> Defendant testified that he went to the complainant's home with his two codefendants solely to purchase drugs which he hoped to resell for profit. Defendant's theory of the case was that he had been set up, by either one or both of his codefendants, and that one or both of these men had shot him and then robbed him. Evidence that the complainant's boyfriend had a criminal record involving drug crimes and had drug charges pending at the time of the trial in this case clearly tends

to make it more probable than it would be without this evidence that defendant went to the complainant's home to purchase drugs. Accordingly, we conclude that this evidence is unquestionably relevant.

However, the trial court permitted defendant to introduce evidence that police located 14 bags of marijuana in the complainant's home that evening and that a police dog indicated that there were three different spots in the home where drugs might be located. Moreover, while the prosecutor elicited testimony that the complainant, rather than her boyfriend, claimed ownership of the drugs and asserted that they were for her personal use, defendant elicited testimony that the drugs were found in a drawer containing the complainant's boyfriend's clothing and bank forms in his name. As a result, we conclude that evidence of the complainant's boyfriend's criminal record and the charges pending against him was cumulative and excludable under MRE 403. Furthermore, because this evidence was cumulative, its probative value was very low and the danger of unfair prejudice resulting from the evidence was extremely high. This being the case, this evidence also was not admissible under MRE 404(b).

*Braddock*, 2006 WL 335678 at *6.

The Michigan Court of Appeals did not address this issue as a matter of federal constitutional law in denying relief on this claim. Accordingly, the deference normally due under 28 U.S.C. § 2254(d) does not apply, and habeas review of the constitutional issue is *de novo*. *See Higgins v. Renico*, 470 F.3d 624, 630 (6th Cir. 2006) (quoting *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003), and citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)).

Upon such consideration, the Court concludes that the state court's ruling did not violate Petitioner's constitutional rights nor deny him a fair trial. First, Petitioner had sufficient opportunity to question Thomas about the incident and his recollection of events. Petitioner was allowed to cross-examine Thomas and challenge the truthfulness of his testimony. Second, Petitioner had a meaningful opportunity to present a defense. Petitioner had the opportunity to present evidence and argue that he went to the residence to purchase drugs, was set up and robbed, and therefore was not responsible for the crimes. To this end, Petitioner presented evidence that

the police found a significant amount of drugs at the home and within Thomas' belongings. The exclusion of additional, cumulative testimony regarding Thomas' prior drug convictions and/or pending charges did not deprive Petitioner of a fair trial or the right to present a defense. *See, e.g., Davis v. Burt*, 100 Fed. Appx. 340, 350 (6th Cir. 2004); *McCullough v. Stegall*, 17 Fed. Appx. 292, 295 (6th Cir. 2001). Petitioner has thus failed to establish a violation of his constitutional rights. Habeas relief is not warranted on this claim.

### C. Denial of Mistrial/Jury Voir Dire Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court erred in denying his mistrial motion arising from improper comments by the prosecutor during jury selection. Respondent contends that this claim lacks merit.

During jury voir dire, the parties questioned the potential jurors about prior jury service. One of the jurors, Juror No. 4, stated that he had been a member of a jury which had acquitted a criminal defendant two years previously. After that verdict, the prosecutor told the jury that evidence of the defendant's prior bad acts had been excluded. The following discussion ensued:

> Prosecutor: Okay. Do you understand that if you were to sit as a juror in this case, those same things may happen because this case is going to be controlled by the Rules of Evidence, and the judge is going to decide if whatever evidence is presented fits within those rule? And there are some things that you may not be able to hear or look at because the Rules of Evidence don't allow it. Do you understand that type of situation could still happen here today?

> Juror No. 4: Yeah, I understand it. I'm still jaundiced behind that, also. What's out there? And I know that my job is to concentrate on what's hear [sic], but that really left an impression on me.

> Prosecutor: Having that experience, do you think you could focus on the legally admitted evidence that you get in this case –

> Juror No. 4: Do my best.

6/15/04 Trial Tr., Vol. I, pp. 40-41.

Outside the presence of the potential jurors, defense counsel moved to discharge the entire jury panel or for a mistrial asserting that the panel was tainted by the foregoing remarks. The trial court denied the motion finding that the jury was not tainted "whatsoever" but agreeing to dismiss Juror No. 4 upon a proper motion for cause. *Id.* at 75-82. Defense counsel further questioned Juror No. 4 about his ability to fairly decide the case. *Id.* at 86-87. The trial court instructed the juror panel that if selected to serve on the jury, they must decide the case solely based on the evidence presented. The jurors responded affirmatively. 6/16/04 Trial Tr., Vol. II, p. 23. Following a bench conference, the trial court excused Juror No. 4. *Id.* at 25. Once the jury was impaneled but prior to opening statements, defense counsel renewed his motion for mistrial claiming that Juror No. 4's discussion of his prior experience tainted the entire jury panel. The trial court denied the motion, noting that it had "advised the jurors that they must decide the case solely based on the evidence presented, and they all indicated they would." *Id.* at 78-83.

"The Sixth and Fourteenth Amendments guarantee a criminal defendant an impartial jury in state court." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008) (citing *Ristaino v. Ross*, 424 U.S. 589, 595 n. 6 (1976); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). Jurors, however, are presumed to be impartial, *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (citing *Irvin*, 366 U.S. at 723), and "due process does not require a new trial every time a juror has been placed in a potentially compromising situation .... Due process means a jury capable and willing to decide the case solely on the evidence before it...." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The Petitioner bears the burden of proving that the jury was biased. *See United States v. Wheaton*, 517 F.3d 350. 362 (6th Cir. 2008). A trial court has the discretion to grant or deny a motion for mistrial

in the absence of a showing of manifest necessity. *See Walls v. Konteh*, 490 F.3d 432, 436 (6th Cir. 2007); *Clemmons v. Sowders*, 34 F.3d 352, 354-55 (6th Cir. 1994).

The Michigan Court of Appeals denied relief on this claim, explaining as follows:

Defendant first argues that the trial court abused its discretion when it denied his motion for a mistrial. We disagree. We review a trial court's decision to deny a motion for a mistrial for an abuse of discretion. *People v. Dennis*, 464 Mich 567, 572; 628 NW2d 502 (2001). "An abuse of discretion is found only if an unprejudiced person, considering the facts on which the trial court acted, would say there was no justification or excuse for the ruling made." *People v. Snider*, 239 Mich App 393, 419; 608 NW2d 502 (2000).

"A mistrial should be granted only where the error complained of is so egregious that the prejudicial effect can be removed in no other way." *People v. Gonzales*, 193 Mich App 263, 266; 483 NW2d 458 (1992). With regard to a claim of error based on extrinsic influences on the jury, our Supreme Court set forth the applicable law in *People v. Budzyn*, 456 Mich 77, 88-90; 566 NW2d 229 (1997):

A defendant tried by jury has a right to a fair and impartial jury. During their deliberations, jurors may only consider the evidence that is presented to them in open court. Where the jury considers extraneous facts not introduced in evidence, this deprives a defendant of his rights of confrontation, cross-examination, and assistance of counsel embodied in the Sixth Amendment.

In order to establish that the extrinsic influence was error requiring reversal, the defendant must initially prove two points. First, the defendant must prove that the jury was exposed to extraneous influences. Second, the defendant must establish that these extraneous influences created a real and substantial possibility that they could have affected the jury's verdict. Generally, in proving this second point, the defendant will demonstrate that the extraneous influence is substantially related to a material aspect of the case and there is a direct connection between the extrinsic material and the adverse verdict. If the defendant establishes this initial burden, the burden shifts to the people to demonstrate that the error was harmless beyond a reasonable doubt. We examine the error to determine if it is harmless beyond a reasonable doubt because the error is constitutional in nature. The people may do so by proving that either the extraneous influence was duplicative of evidence produced at trial or the evidence of guilt was overwhelming. [Citations omitted].

We conclude that defendant has met his burden of proving that the jury pool was exposed to an extrinsic influence. The prosecutor commented in front of the jury pool that it was possible that some of the evidence the prosecution had against

defendant might not be introduced at trial. In so doing, she suggested that there might be additional evidence of defendant's guilt beyond what the jury would hear.

However, defendant has failed to meet his burden of proving that this extrinsic influence created a real and substantial possibility that it could have affected the jury's verdict. The prosecutor's comments were in response to a specific point raised by a potential juror during voir dire. They were directed to ensuring that the particular potential juror could be impartial and fair if he were chosen to serve on the jury. The prosecutor's comments were extremely brief, and the prosecutor did not dwell on the point beyond what was necessary to properly question the potential juror. Additionally, the prosecutor did not indicate that evidence actually did exist that would not be presented to the jury, but rather merely stated that it was possible that some of the prosecution's evidence might be barred the rules of evidence. Under these circumstances, we conclude that defendant failed to meet his burden of proving that the extrinsic influence created a real and substantial possibility that it could have affected the jury's verdict.

*Braddock*, 2006 WL 335678 at *1-2.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The trial court acted well within its discretion in denying Petitioner's motions to excuse the jury panel and for mistrial. While the prosecutor indicated that there could be some evidence which would not be disclosed to the jury during the trial, she did not state that there was any such suppressed evidence nor reference specific information. The comment during jury voir dire was brief, was made in response to Juror #4's comments about his prior experience, and was intended to determine whether the juror could decide the case fairly. Moreover, the trial court questioned the jury panel about their ability to decide the case solely on the evidence, excused Juror #4 for cause, and instructed the seated jury about their duty to decide the case based upon the evidence. Given the circumstances, Petitioner has not established that the jury panel or the seated jury was prejudiced against the defense. Moreover, the prosecution presented significant evidence of Petitioner's guilt at trial. Habeas relief is not warranted on this claim.

D. Prosecutorial Misconduct Claims

Petitioner also asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by arguing facts not in evidence, misstating the evidence, calling him a liar, arguing inconsistent theories, shifting the burden of proof, and commenting on the defense's failure to call a co-defendant as a witness. Respondent contends that these claims lack merit.

The United States Supreme Court has stated that prosecutors must "refrain from improper methods calculated to produce a wrongful conviction." *Berger v. United States*, 295 U.S. 78, 88 (1935). To prevail on a prosecutorial misconduct claim, a habeas petitioner must demonstrate that the prosecutor's remarks or conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The United States Court of Appeals for the Sixth Circuit has adopted a two-part test for determining whether prosecutorial misconduct violates a defendant's due process rights. *See Macias v. Makowski*, 291 F.3d 447, 452 (6th Cir. 2002) (citing cases). First, the court must determine whether the challenged statements were indeed improper. *Id*. at 452. Upon a finding of impropriety, the court must decide whether the statements were flagrant. *Id.* Flagrancy is determined by an examination of four factors: 1) whether the statements tended to mislead the jury or prejudice the accused; 2) whether the statements were isolated or among a series of improper statements; 3) whether the statements were deliberately or accidentally before the jury; and 4) the total strength of the evidence against the accused. *Id.*; *see also Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000) (citing *United States v. Francis*, 170 F.3d 546, 549-50 (6th Cir. 1999)). "[T]o constitute the denial of a fair trial, prosecutorial misconduct must be 'so pronounced and persistent that it permeates the entire atmosphere of the trial,' or 'so gross as probably to prejudice the defendant.'" *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (citations omitted).

Petitioner first asserts that the prosecutor engaged in misconduct by arguing facts not in evidence and misstating the evidence. Petitioner objects to the prosecutor's arguments about Petitioner's role in leading/planning the crime, the blood on the doormat, Willis' statements to the police about how much she paid for marijuana found in her home, and the examination of Willis' robe for bullet holes. It is well-settled that a prosecutor may not misstate the evidence or assume the existence of prejudicial facts not in evidence. *See Donnelly*, 416 U.S. at 646; *Darden v. Wainwright*, 477 U.S. 168, 182 (1986); *Hodge v. Hurley*, 426 F.3d 368, 380-81 (6th Cir. 2005); *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001).

The Michigan Court of Appeals denied relief on this claim, stating in relevant part:

> Defendant asserts that the prosecutor made four statements that constituted an improper argument of facts not in evidence. With respect to two of these statements, we conclude that this argument is without merit. There was testimony regarding blood on the doormat, and testimony indicated that defendant helped plan the home invasion. With regard to the other two statements we conclude that the prosecutor was in fact arguing facts not in evidence. Neither party presented any evidence that the complainant informed the police how much she had paid for the marijuana found in her home. Additionally, neither party presented any evidence that the complainant's robe was ever examined for the presence or absence of bullet holes. However, in both instances trial counsel immediately objected to the improper testimony. Moreover, in both instances the court immediately sustained these objections, once expressly, the other implicitly. Accordingly, these errors were cured by timely objection. Moreover, even if a prosecutor's remarks in closing argument did constitute error, this does not entitle a defendant to reversal of his convictions when the error was cured by the court's cautionary instruction that the attorneys' arguments did not constitute evidence, *People v. Hall*, 396 Mich 650, 656; 242 NW2d 377 (1976). For both of these reasons, these statements cannot form the basis for the reversal of defendant's convictions.

*Braddock*, 2006 WL 335678 at *3.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. First, the record indicates that the prosecution's arguments about Petitioner's role as a leader in the crime and the blood on the doormat were supported by the

evidence or reasonable inferences drawn therefrom. It is well-established that a prosecutor may argue reasonable inferences from the evidence. *See Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000). The prosecutor's arguments about Petitioner's role in the crime and the blood on the doormat were therefore appropriate. The fact that Petitioner's testimony or other evidence in the record may have supported a counter-argument is inconsequential. Second, even assuming that the prosecutor's arguments about the marijuana and the robe were improper, they were not so flagrant as to deprive Petitioner of a fair trial. The comments were brief and did not mislead the jury about central issues in the case. The prosecution also presented significant evidence of Petitioner's guilt at trial. Moreover, any potential prejudice to Petitioner was cured by defense counsel's objections, the trial court's curative actions, and the general jury instructions which reaffirmed that the attorneys' comments are not evidence. Petitioner has not shown that any improper arguments by the prosecutor rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

Petitioner next asserts that the prosecutor engaged in misconduct by calling him a liar on two occasions. It is clearly inappropriate for a prosecutor to make personal attacks on a defendant or defense counsel. *See, e.g., United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). It is also improper for a prosecutor to express personal beliefs as to a defendant's guilt or personal opinions concerning a witness's credibility. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002). As noted, however, a prosecutor does have leeway to argue reasonable inferences from the evidence. *See Byrd*, 209 F.3d at 535. Moreover, a prosecutor may argue from the facts that a witness, including a testifying defendant, is or is not worthy of belief. *See Portuondo v. Agard*, 529 U.S. 61, 69 (2000).

The Michigan Court of Appeals denied relief on this claim finding that the prosecutor's comments on Petitioner's credibility were proper and based upon the testimony presented at trial. *Braddock*, 2006 WL 335678 at *4. This Court agrees. The prosecutor did not improperly denigrate the defense nor express a personal belief in Petitioner's guilt. Rather, she argued from the testimony presented that Petitioner was not worthy of belief. Petitioner has failed to establish that the prosecutor's argument was improper or that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

Petitioner also asserts that the prosecutor engaged in misconduct by shifting the burden of proof. Petitioner claims that the prosecutor did so by pointing out that he failed to produce evidence of his lottery winnings and by questioning why Petitioner did not call co-defendant Fred Bouthel as a witness. A prosecutor may not shift the burden of proof to a defendant. *See, e.g., United States v. Clark*, 982 F.2d 965, 968-69 (6th Cir.1993). A prosecutor may, however, highlight inconsistencies or inadequacies in the defense, *Bates v. Bell*, 402 F.3d 635, 646 (6th Cir. 2005), and point out the lack of evidence supporting the defense theory. *United States v. Forrest*, 402 F.3d 678, 686 (6th Cir. 2005).

In this case, the Michigan Court of Appeals found that the prosecutor's remark about the defense failure to produce evidence of the lottery winnings was proper because Petitioner testified about such matters and presented an alternate theory of events. The Michigan Court of Appeals further found that the prosecutor's comment about the defense failure to call Bouthel was improper, but was cured by the trial court's cautionary instruction. *Braddock*, 2006 WL 335678 at *4.

The state court's decision is neither contrary to Supreme Court precedent nor an unreasonable application of the law or the facts. First, the prosecutor's remark about the lottery

winnings was proper to counter Petitioner's testimony and the defense theory of the case. "[W]here a defendant testifies at trial and advances an alternative theory of the case that would exonerate him from the crime, prosecutorial comments on the validity of the theory do not shift the burden of proof to the defendant." *Traylor v. Price*, 239 F. App'x 235, 239 (6th Cir. 2007). Second, accepting that the prosecutor's comment about the failure to produce Bouthel was improper, it was not so flagrant as to deprive him of a fair trial. Moreover, Petitioner has failed to show that he was prejudiced by the comment given that the trial court issued a cautionary instruction and repeatedly instructed the jury about the burden of proof during trial. *See Scott v. Elo*, 302 F.3d 598, 603-04 (6th Cir. 2002). Jurors are presumed to follow the court's instructions. *See United States v. Powell*, 469 U.S. 57, 66 (1984) ("Jurors ... take an oath to follow the law as charged, and they are expected to follow it."). Petitioner has not established that the disputed remarks were improper and/or that those remarks deprived him of a fundamentally fair trial. Habeas relief is not warranted on this claim.

Lastly, Petitioner asserts that the prosecutor engaged in misconduct by arguing inconsistent theories about the case. The Michigan Court of Appeals denied relief on this claim, stating as follows:

> Defendant next argues that the prosecutor violated his due process rights by arguing different and inconsistent facts to defendant's jury than she argued before his codefendant's jury. More specifically, defendant asserts that the prosecutor impermissibly argued in his trial that defendant was shot in the complainant's house, while arguing at his codefendant's trial that defendant was shot in the garage. Once again, we disagree. We review this unpreserved evidentiary issue for plain error that affected substantial rights. *Carines, supra* at 763.

> Consistent with due process, a prosecutor may not argue facts to the jury that he believes are untrue. *Napue v. Illinois*, 360 US 264, 270; 79 S Ct 1173; 3 L Ed 2d 1217 (1959). Thus, if a prosecutor secures a conviction in one trial based on a

particular version of the facts, he cannot then secure a conviction in a codefendant's trial based on a different, conflicting version of those facts.

The prosecutor did not argue to the jury conflicting versions of the facts as defendant claims. In both cases the prosecutor argued that defendant was shot while inside the house and that he wound up coming to rest in the garage. Therefore, the prosecutor did not commit plain error in making this argument. The prosecutor did present differing arguments in the two trials regarding ownership of the marijuana found in the complainant's home, however, both arguments were made to the trial court outside the jury's presence and did not impact either verdict. Accordingly, defendant has failed to demonstrate that this error affected his substantial rights. *Carines, supra* at 763.

*Braddock*, 2006 WL 335678 at *10-11.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof.  First, there is no "clearly established" Supreme Court precedent establishing that a prosecutor violates a defendant's due process rights by presenting inconsistent facts or theories in two different trials.  *See Bradshaw v. Stumpf*, 545 U.S. 175, 186-87 (2005) (ruling that prosecutor's inconsistent positions in two cases did not void defendant's guilty plea and expressing "no opinion on whether the prosecutor's action amounted to a due process violation, or whether any such violation would have been prejudicial"); *see also Blalock v. Wilson*, 320 F.Appx. 396, 418 n. 26 (6th Cir. 2009).

Second, even assuming that such prosecutorial action could violate due process and justify habeas relief, Petitioner has failed to establish such a constitutional violation.  In cases where such a due process violation has been found, "the inconsistency in the subsequent presentation was essential in order to prosecute the individual in question.  In other words, the Government in those subsequent cases could not have prosecuted the remaining individual for the same crime had the Government maintained the theory or facts argued in the earlier trial."  *United States v. Dickerson*, 248 F.3d 1036, 1043-44 (11th Cir. 2001).  In other words, the Petitioner must show the existence

of an inconsistency at the core of the prosecutor's cases against defendants for the same crime, and the error must have "rendered unreliable" the habeas petitioner's conviction. *See Clay v. Bowersox*, 367 F.3d 993, 1004 (8th Cir. 2004). Petitioner has made no such showing as to either of the claimed inconsistences in this case.

Moreover, as found by the Michigan Court of Appeals, Petitioner has not shown that the prosecutor actually presented inconsistent theories about where he was standing when he was shot. And even assuming that the prosecutor made inconsistent arguments about the marijuana found in the victim's residence, the Michigan Court of Appeals found that such arguments were not made in front of Petitioner's jury. Petitioner has not rebutted this factual finding. Consequently, Petitioner cannot establish that the prosecutor's alleged misconduct affected the outcome at trial or otherwise rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

## E.  Jury Instruction Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court failed to instruct the jury on his theory of "mere presence." Respondent contends that this claim lacks merit. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than that the instructions are undesirable, erroneous or universally condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). State law instructional errors rarely form the basis for federal habeas corpus relief. *Estelle*, 502 U.S. at 71-72.

The failure to give a defense instruction that is supported by the evidence does not automatically entitle a petitioner to habeas relief; the failure to instruct must have rendered the

petitioner's trial fundamentally unfair. *See Maes v. Thomas*, 46 F.3d 979, 984-85 (10th Cir. 1995); *Nickerson v. Lee*, 971 F.2d 1125, 1137 (4th Cir. 1995). A failure to instruct does not deprive a petitioner of fundamental fairness where the instructions as a whole adequately present the defense theory to the jury. *See Duckett v. Godinez*, 67 F.3d 734, 743 (9th Cir. 1995). "An omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson*, 431 U.S. at 155: *see also Hardaway v. Withrow*, 305 F.3d 558, 565 (6th Cir. 2002).

The Michigan Court of Appeals denied relief on this claim finding that although the trial court should have given the mere presence instruction because Petitioner was charged as an aider and abettor, the failure to do so did not prejudice Petitioner because the given instructions required the jury to find that Petitioner affirmatively participated in the crime in order to convict him of the charged offenses. *Braddock*, 2006 WL 335678 at *9.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. The record reveals that the trial court properly instructed the jury on the elements of the charged offenses, as well as the concept of aiding and abetting. Such instructions required the jury to conclude that Petitioner actively engaged in the crime, and was not merely present at the scene, in order to find him guilty of the charged offenses. While the mere presence instruction may have been appropriate under state law and in keeping with the defense theory, it was not constitutionally required. The jury was well aware of Petitioner's defense to the crime, as well as the necessary elements of the charged offenses. The jury instructions as a whole adequately conveyed such matters to the jury. The jury could not have accepted Petitioner's "mere presence" defense or his claim that Williams intended to rob him without acquitting him under the instructions given by the trial court, and this Court must presume that the jury followed the trial court's

instructions.  *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also, Shannon v. United States*, 512 U.S. 573, 585 (1994); *United States v. Olano*, 507 U.S. 725, 740 (1993).

Where, as here, the instructions as a whole adequately convey the defense theory of the case to the jury, a petitioner is not entitled to habeas relief based on the trial court's failure to give a specific instruction.  *See, e.g., Rodriguez v. Young*, 906 F.2d 1153, 1166 (7th Cir. 1990) (habeas relief not warranted where "the instructions finally given to the jury adequately addressed the [petitioner's] theory in a general way, even if not as specifically as [he] would have liked," and the instructions, "considered together, and along with counsel's argument and cross examination ... should have reasonably conveyed to the jury [the petitioner's] theory of the case.").  Accordingly, the Court concludes that the trial court's failure to give a mere presence instruction did not render Petitioner's trial fundamentally unfair.  Habeas relief is not warranted on this claim.

### F.  Ineffective Assistance of Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel was ineffective for failing to object to the allegedly unreliable and prejudicial testimony of expert witness Kyle Hoskins, for failing to request a mere presence instruction, and for failing to investigate his juvenile convictions which he claims were improperly used to enhance his sentence.  Respondent contends that these claims lack merit.

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel.  First, a petitioner must  prove that counsel's performance was deficient.  This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  466 U.S. at 687.  Second, the petitioner must

establish that the deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

### 1. Failure to Object to Testimony

Petitioner first asserts that trial counsel was ineffective for failing to object to the testimony of expert witness Kyle Hoskins, which Petitioner believes was improper. Hoskins was qualified as an expert in the field of trace evidence and serology and testified about the star-shaped hole in the back of the coat found at the scene, stating that the hole could be consistent with a gunshot.

The Michigan Court of Appeals denied relief on this claim, finding that Hoskins was properly qualified as an expert and that counsel was therefore not ineffective for failing to object to her testimony. The court explained:

> The admission of expert testimony requires that: (1) the witness is an expert; (2) there are facts in evidence which require or are subject to examination and analysis by a competent expert; and (3) the knowledge is in a particular area which belongs more to an expert than to the common man. *People v. Beckley*, 161 Mich App 120, 125; 409 NW2d 759 (1987), *aff'd* 434 Mich. 691 (1990). The critical inquiry is whether the expert testimony will aid the fact finder in making the ultimate decision in the case. *People v. Smith*, 425 Mich 98, 105; 387 NW2d 814 (1986). In determining whether the testimony would aid the trier of fact, it is helpful to apply the "'common sense inquiry whether an untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment'" from experts. *Id.* at 106, quoting Ladd, *Expert Testimony*, 5 Van L R 414, 418 (1952).

> The expert witness at issue here was qualified in the areas of trace evidence and serology. She indicated that her expertise in trace evidence included the areas of hair and fiber comparisons, footwear and tire track comparisons, bloodstain pattern interpretation, and crime scene reconstruction, as well as serology. Thus, this witness was an expert in these areas, including the area of crime scene reconstruction, as a sub-set of the field of trace evidence. Moreover, there were facts in evidence that required or were subject to examination and analysis by a competent expert. The prosecution introduced evidence that a number of pieces of physical evidence had been submitted to the Michigan State Police Crime Lab for testing. Such facts were subject to examination and analysis by a competent expert. Further, the particular testimony given, namely that a bullet could have created a hole of the shape found in the jacket found at the scene, is in a particular area that belongs more to an expert than to the common man. The general public would not know or be able to recognize what shape a bullet would make when it passed through fabric or skin. Therefore, we conclude that the trial court did not commit plain error when it permitted the expert witness to give the above-cited testimony.

> Defendant has also asserted that trial counsel was ineffective in failing to object to Hoskins' testimony regarding the star-shaped hole. However, trial counsel is not required to advocate a meritless position. *People v. Riley*, 468 Mich 135, 142; 659 NW2d 611 (2003).

Braddock, 2006 WL 335678 at *10.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. First, the Michigan Court of Appeals' determination that Hoskins was properly qualified to provide expert testimony is a state law decision entitled to deference on federal habeas review. State courts are the final arbiters of state law and the federal courts will not intervene in such matters. *See, e.g., Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Second, given that the expert testimony was admissible under state law, any wholesale objection by trial counsel would likely have been denied. Defense counsel cannot be deemed deficient for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1328. Lastly, trial counsel may have reasonably determined that cross-examination of Hoskins was a more effective and appropriate trial strategy for challenging her testimony than objecting to her qualifications as an expert witness. The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was ineffective. *See, e.g., Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002) ("an ineffective-assistance-of-counsel claim cannot survive so long as the decisions of a defendant's trial counsel were reasonable, even if mistaken"). Petitioner has failed to establish that counsel erred or that he was prejudiced by counsel's lack of objection at trial. Habeas relief is not warranted on this claim.

## 2. Failure to Request Jury Instruction

Petitioner next asserts that trial counsel was ineffective for failing to request a mere presence jury instruction. The Michigan Court of Appeals denied relief on this claim finding that while counsel was deficient for failing to request the instruction, Petitioner could not establish that he was prejudiced by counsel's conduct because the given instructions were sufficient and the mere presence instruction would not have affected the outcome at trial. *Braddock*, 2006 WL 335678 at

*9. This decision is neither contrary to Supreme Court precedent nor an unreasonable application thereof. Given this Court's determination that the lack of a mere presence instruction did not render Petitioner's trial fundamentally unfair, Petitioner cannot establish that he was prejudiced by counsel's conduct as required under *Strickland*. Habeas relief is not warranted on this claim.

### 3. Failure to Investigate Juvenile Convictions

Lastly, Petitioner asserts that trial counsel was ineffective for failing to investigate his juvenile convictions. Petitioner claims that such investigation would have revealed that his juvenile convictions were un-counseled and should not have been considered at sentencing. The Michigan Court of Appeals denied relief on this claim finding that Petitioner had failed to establish that his juvenile convictions were obtained without counsel or that trial counsel failed to investigate the matter. *Braddock*, 2006 WL 335678 at *12. This Court agrees. Petitioner has failed to present evidence showing that his juvenile convictions were unconstitutionally-obtained or that counsel failed to investigate this issue. Moreover, Petitioner has failed to establish that he was prejudiced in this regard as he has not shown that the trial court relied upon any convictions obtained in violation of his right to counsel in imposing his sentence. The record before this Court indicates that Petitioner was properly sentenced as a fourth habitual offender. Petitioner has not shown that counsel was ineffective under the *Strickland* standard. Habeas relief is not warranted.

### G. Insufficient Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecution presented insufficient evidence to support his convictions. He claims that the prosecution failed to present sufficient evidence of his identity and/or that he was one of the shooters or aided and abetted the other two men. Respondent contends that this claim lacks merit.

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court established that a federal court's review of a sufficiency of the evidence claim must focus on whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. The court must view this standard through the framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002). Further, the *Jackson* standard must be applied "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Michigan's first-degree home invasion statute provides:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.
(b) Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2); *see also People v. Sands*, 261 Mich. App. 158, 162, 680 N.W.2d 500 (2004). The elements of assault with intent to commit murder are: (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. Mich. Comp. Laws § 750.83; *People v. Plummer*, 229 Mich. App. 293, 299, 581 N.W.2d 753 (1998); *see also Warren v. Smith*, 161 F.3d 358, 361 (6th Cir. 1998). Circumstantial evidence and reasonable inferences arising from the evidence may constitute satisfactory proof of the elements of an offense, *see*

*People v. Jolly*, 442 Mich. 458, 466, 502 N.W.2d 177 (1993); *Plummer*, 229 Mich. App. at 299,

including a defendant's intent or state of mind. *See People v. Dumas*, 454 Mich. 390, 398, 563

N.W.2d 31 (1997). Additionally, the intent to kill may be inferred from the use of a dangerous

weapon. *People v. DeLisle*, 202 Mich. App. 658, 672, 509 N.W.2d 885 (1993); *see also Steele v.*

*Withrow*, 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001). The elements of felony firearm are that the

defendant possessed a firearm during the commission of, or the attempt to commit, a felony. Mich.

Comp. Laws § 750.227b; *People v. Akins*, 259 Mich. App. 545, 554, 675 N.W.2d 863 (2003) (citing

*People v. Avant*, 235 Mich. App. 499, 505, 597 N.W.2d 864 (1999)).

To convict a defendant under an aiding and abetting theory, the prosecution must establish

that the crime was committed by the defendant or some other person, that the defendant performed

acts or gave encouragement which aided or assisted in the commission of the crime, and that the

defendant either intended to commit the crime or knew that the principal intended to commit the

crime at the time he gave the aid or encouragement. *See People v. Carines*, 460 Mich. 750, 759,

597 N.W.2d 130 (1999). An aider and abettor's state of mind may be inferred from all the facts and

circumstances. *Id.*

Applying the *Jackson* standard, the Michigan Court of Appeals determined that the

prosecution presented sufficient evidence to support Petitioner's convictions. The court explained

in relevant part:

> The prosecution presented evidence that three men broke down a garage door and
> a door between the garage and the complainant's home, and entered her home while
> she and her boyfriend were inside, and that all three men were firing guns at the
> complainant as they came into the home. Defendant admitted that he was one of
> three men who entered the complainant's home. But defendant testified that he did
> not have a weapon that night and that he never intended to force his way into the
> complainant's house or assault or kill anyone that evening. Looking at this evidence
> in the light most favorable to the prosecution, we conclude that the prosecution

> presented evidence sufficient for a rational trier of fact to be persuaded that the prosecution had proved all the elements of each of the charged crimes beyond a reasonable doubt.

*Braddock*, 2006 WL 335678 at *7.

This decision is neither contrary to *Jackson* nor an unreasonable application of the law or the facts. The testimony of the victims established that three men entered their residence without permission, that those men were looking for Thomas, and that they fired gunshots at Willis. Both Petitioner and Willis suffered gunshot wounds. The police found Petitioner outside the residence, shot in the back, with his ski mask nearby. Ballistic evidence indicated that at least three weapons had been fired in the home. Such testimony provided sufficient evidence to support Petitioner's convictions. In fact, the testimony of a victim alone can be constitutionally sufficient to sustain a conviction. *See Tucker v. Palmer*, 541 F.3d 652, 658 (6th Cir. 2008) (citations omitted). Given the trial testimony, particularly that of the victims and the police investigators, a reasonable jury could find the elements of first-degree home invasion, assault with intent to commit murder, and felony firearm beyond a reasonable doubt.

Petitioner's insufficient evidence claim challenges the credibility and weight to be accorded the evidence presented at trial. However, it is well-settled that "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. It is the job of the fact-finder, not a federal habeas court, to resolve credibility conflicts. *See Tucker*, 541 F.3d at 661; *Martin*, 280 F.3d at 618; *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983).

Lastly, to the extent that Petitioner challenges the state court's construction or application of state law, he is not entitled to relief. "A claim that the state court misunderstood the substantive requirements of state law does not present a claim under § 2254. A federal court may not issue the writ on the basis of a perceived error of state law." *Sanford v. Yukins*, 288 F.3d 855, 860 (6th Cir. 2002). Given the testimony of the victims and the police, the Court finds that the state court's decision that a rational trier of fact could find the essential elements of first-degree home invasion, assault with intent to commit murder, and felony firearm beyond a reasonable doubt was reasonable. Habeas relief is not warranted on this claim.

## H. Sentencing Claim

Petitioner also asserts that he is entitled to habeas relief because the trial court relied upon facts neither proven at trial nor admitted by him in imposing his sentence in violation of his Sixth Amendment rights. Petitioner contests the scoring of several offense variables of the state sentencing guidelines. Respondent contends that this claim is not cognizable upon habeas review and/or lacks merit.

Claims which arise out of a state court's sentencing decision are not normally cognizable upon habeas review, unless the petitioner can show that the sentence imposed exceeds the statutory limits or is wholly unauthorized by law. *See Lucey v. Lavigne*, 185 F. Supp.2d 741, 745 (E.D. Mich.2001). Petitioner's challenge to the scoring of the offense variables is not cognizable on federal habeas review because it is basically a state law claim. *See Austin v. Jackson*, 213 F.3d 298, 301 (6th Cir. 2000); *McPhail v. Renico*, 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006). It is well-established that federal habeas relief does not lie for perceived errors of state law. *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). State courts are the final arbiters of state law, and

the federal courts will not intervene in such matters. *See Oviedo v. Jago*, 809 F.2d 326, 328 (6th Cir. 1987). Habeas relief is not warranted on Petitioner's state law sentencing issues.

A sentence may violate due process, however, if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct. *See Townsend v. Burke*, 334 U.S. 736, 741 (1948); *see also United States v. Tucker*, 404 U.S. 443, 447 (1972); *United States v. Sammons*, 918 F.2d 592, 603 (6th Cir. 1990) (criminal defendant must have a meaningful opportunity to rebut contested information at sentencing). To prevail on such a claim, the petitioner must show that the trial judge relied on the allegedly false information. *See United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984); *Draughn v. Jabe*, 803 F. Supp. 70, 81 (E.D. Mich.1992). Petitioner has made no such showing. The record reveals that the trial court considered the facts and circumstances of the crime, the pre-sentence report, and other permissible factors. Petitioner had an opportunity to contest the accuracy of the reports, the scoring of the guidelines, and other sentencing factors. Petitioner has not shown that the trial court relied upon materially false or inaccurate information in imposing his sentence. Habeas relief is not warranted on such a basis.

Petitioner also cannot prevail on a claim that he is entitled to habeas relief because the trial court violated his Sixth Amendment rights. In *Apprendi v. New Jersey*, 530 U.S. 466, 530 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." In *Blakely v. Washington*, 542 U.S. 296 (2004), the Supreme Court applied *Apprendi* to a state sentencing guideline scheme, under which the maximum penalty could be increased by judicial fact-finding, held that the state guideline scheme violated Sixth

Amendment rights, and reiterated that any fact that increased the maximum sentence must be admitted by the defendant or proven to a jury beyond a reasonable doubt. *See United States v. Booker*, 543 U.S. 220, 232 (2005). Petitioner cites *Blakely* in his pleadings.

However, the *Blakely* line of cases does not apply to Michigan's intermediate sentencing scheme. In Michigan, the maximum sentence is established by statute and cannot be varied by the sentencing judge; the judge's only discretion is in setting the minimum sentence. The federal courts within this Circuit have examined Michigan's indeterminate sentencing scheme and have found no possible Sixth Amendment violation. *See Tironi v. Birkett*, No. 06-1557, 2007 WL 3226198 (6th Cir. Oct.26, 2007) (unpublished); *Delavern v. Harry*, No. 07-CV-13293, 2007 WL 2652603, *3-4 (E.D. Mich. Sept.7, 2007); *Connor v. Romanowski*, No. 05-74074, 2007 WL 1345066 (E.D. Mich. May 4, 2007); *McNall v. McKee*, No. 1:06-CV-760, 2006 WL 3456677, *2 (W.D. Mich. Nov.30, 2006); *accord People v. Drohan*, 475 Mich. 140, 160-62, 715 N.W.2d 778 (2006). Habeas relief is not warranted on this claim.

## IV. Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims presented in his petition, as amended. Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the court's

assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that...jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336-37. When a court rejects a habeas claim on procedural grounds without addressing the claim's merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that reasonable jurists would not find the Court's procedural rulings debatable. The Court further concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right as to his habeas claims. Accordingly, the Court **DENIES** a certificate of appealability. The Court also **DENIES** leave to proceed *in forma pauperis* on appeal because any appeal would be frivolous. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED.**


S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: February 22, 2010

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on February 22, 2010.

S/Marie E. Verlinde
Case Manager
(810) 984-3290